# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **CONNIE L. HENNIGH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 15-2684-JWL** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income benefits (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) evaluation of and narrative discussion regarding his consideration of Plaintiff's medically determinable impairments--migraine headaches and carpal tunnel syndrome with tremors--the court ORDERS that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

## I.      Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning September 1, 2009.  (R. 15, 149, 153).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the ALJ erred at step two of the sequential evaluation process in finding her migraines and carpal tunnel syndrome are medically determinable, but nonetheless are not severe within the meaning of the Act; at step three by failing to consider whether the severity of Plaintiff's migraine headaches were medically equivalent to Listing 11.03 (non-convulsive epilepsy); and by failing to accord controlling weight to the medical opinion of her treating rheumatologist, Dr. Rhulman.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must determine if the ALJ's factual findings are supported by substantial evidence in the record and if he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

3

The Commissioner next evaluates steps four and five of the sequential process--determining whether, in light of the RFC assessed, claimant can perform her past relevant work; and whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds that remand is necessary here because the ALJ erroneously evaluated Plaintiff's migraine headaches and carpal tunnel syndrome.  Plaintiff's step three argument that her migraine headaches medically equal the severity of Listing 11.03 follows naturally from her step two argument, and appears to be at least potentially meritorious.  However, the court may not, and will not, provide an advisory opinion on the step three issue.  Plaintiff may make her arguments in that regard, and with respect to the proper weight due Dr. Rhulman's medical opinion, on remand.

## II.    Step Two

Plaintiff claims that the ALJ erred at step two of the sequential evaluation process by failing to find that Plaintiff's migraine headaches and her carpal tunnel syndrome with tremors are severe impairments.  (Pl. Brief 19).  She points out that the test for a severe

impairment is <u>de minimis</u> and she points to record evidence which in her view
demonstrates that both her headaches and her carpal tunnel syndrome have more than a
minimal effect on her ability to perform basic work activities.  <u>Id.</u> at 19-23.  She points
out that when a claimant has multiple impairments, which individually may not be severe
within the meaning of the Act, the regulations require that the combined effect of all of
the claimant's impairments must be considered in deciding disability.  <u>Id.</u> at 23.  She
claims that "even if the ALJ properly found that Ms. Hennigh's . . . headaches and carpal
tunnel syndrome . . . were not severe impairments, . . . the effects of those conditions
were not considered in combination with her other impairments."  <u>Id.</u> at 23-24.

    The Commissioner argues that the ALJ reasonably considered Plaintiff's medically
determinable severe impairments.  (Comm.r Br. 3).  She argues that "[c]ontrolling Tenth
Circuit case law makes clear that finding an impairment is non-severe does not merit
remand so long as the ALJ identifies other severe impairments and continues with the
sequential evaluation process."  <u>Id.</u> (citing <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1266
(10th Cir. 2008)).  She argues that the ALJ did not stop at step two, but that he applied the
remaining steps of the sequential evaluation process, and in assessing Plaintiff's RFC the
ALJ considered Plaintiff's severe impairments, all of her symptoms, "and her 'medically
determinable impairments'" <u>Id.</u> (quoting R. 21).  She argues therefore, that "the ALJ
considered both [Plaintiff's] severe and non-severe impairments in making his [RFC]
finding," and that "any alleged error in finding Plaintiff's migraines and carpal tunnel
syndrome . . . non-severe, was harmless and does not merit remand."  (Comm'r Br. 3-4).

In her Reply Brief, Plaintiff distinguishes <u>Carpenter</u> because the impairments at issue in that case were properly considered non-severe whereas the migraines and carpal tunnel syndrome at issue here are severe and were not considered at any of the steps of the sequential process.  (Reply 2).  Plaintiff argues that because a severe impairment by definition has more than a minimal effect on a claimant's ability to perform basic work activity, "when a severe impairment is present there must be a limitation in the claimant's [RFC] that directly relates to that impairment."  <u>Id.</u>  She argues that the ALJ did not account for these impairments in the RFC assessed and did not include limitations related to these impairments in his hypothetical questioning of the vocational expert, and thereby erred.  <u>Id.</u>, at 2-3.

**A.     <u>Step Two Standard</u>**

An impairment is properly considered not severe if it does not significantly limit a claimant's ability to do basic work activities such as walking, standing, sitting, reaching, carrying, handling, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "<u>de minimis</u>" showing.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on her ability to perform basic work activities.  <u>Williams</u>, 844 F.2d at 751.  However, she must show more than the mere

presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

### B.    The ALJ's Step Two Findings Regarding Migraines and Carpal Tunnel

The ALJ considered and discussed Plaintiff's headaches, hand tremors, and carpal tunnel syndrome in his step two analysis.  (R. 18-19).  Therein, he found that Plaintiff has severe impairments including degenerative disc disease, sleep apnea, status-post left knee replacement, and fibromyalgia.  (R. 18).  And, he determined that Plaintiff's headaches, hand tremors, and carpal tunnel syndrome are medically determinable impairments, but are not severe within the meaning of the Act.  Id., at 18-19.

The ALJ summarized Plaintiff's testimony and the other record evidence regarding each of these impairments, id., and explained his evaluation of each of them:

> Though the claimant alleged she has chronic headaches, she does not seek ongoing neurological treatment (Exhibit 20F [(R. 587-97)]), and she no longer uses injection therapy (Exhibit 13F/5 [(R. 535)]).  She testified she has had a headache for four weeks; however, she has not sought emergency room treatment for these ongoing symptoms.  She also testified that the chiropractic care does help her symptoms; however, she continues to seek this type of treatment on a regular basis (Exhibits 9F; 16F [(R.415-17, 540-45)]).  Finally, numerous CTs and MRIs of the head have all been normal (Exhibits 1F/13, 22, 28, 30; 7F/22 [(R. 277, 286, 292, 294, 406)]).  Based on this information, the undersigned finds this impairment is nonsevere.

* * *

Despite these allegations [regarding carpal tunnel syndrome with hand tremors], the record shows the claimant reported she was pleased with the results of her surgery, she has improved range of motion and she has not required ongoing treatment (Exhibits 3F/1; 13F/5 [(R. 302, 535)]).  She was able to demonstrate 30 pounds of grip strength on the right, and 15 pounds grip strength on the left during the consultative examination (Exhibit 13F/3 [(R. 533)]).  She was also able to pick up a coin, open a door, and fasten a button (Exhibit 13F/3 [(R. 533)]).  During a neurological examination, she showed only mild intention tremor on examination and no restring[1] tremor (Exhibit 20F/4 [(R. 590)]).  In addition, the claimant testified she keeps a journal for her fibromyalgia, she does some laundry by hand, and she is able to prepare a scrambled egg, despite her symptoms.  She was able to prepare written forms for her application for disability benefits (Exhibit 7E [(R. 223-32)]).  Based on this information, the undersigned finds this impairment is nonsevere.

(R. 18-19).

### C.    Analysis

As Plaintiff argues, the required showing for a severe impairment is de minimis.

She need only show that her headaches or her carpal tunnel would have more than a

minimal effect on her ability to do basic work activities.  Williams, 844 F.2d at 751.

Although the ALJ found these impairments are not severe, he did not explain how he

determined that they have no more than a minimal effect on Plaintiff's ability to perform

basic work abilities.  He determined that Plaintiff's allegations of disabling symptoms

"are not entirely credible" during his RFC assessment (R. 21), but he did not identify

which allegations regarding headaches or carpal tunnel he determined to be incredible and

---

[1]This is apparently a typographical error.  The treatment note states, "Today she does have some mild intention tremor in the bilateral upper extremities.  No resting tremor."  (R. 590) (emphasis added).

8

which ones, if any, he accepted.  In fact, during his step two analysis, he appears to have accepted Plaintiff's allegations that she had had a headache for four weeks at the time of the hearing; that she has chronic headaches occurring two to three times a week; that she has dizziness, lightheadedness, nausea, photophobia, phonophobia, and blurred vision resulting from her headaches; and that she can no longer sew, and can use a computer for only fifteen minutes because of worsening of her carpal tunnel syndrome.  (R. 18-19).

And these symptoms, apparently accepted by the ALJ, would seem to have more than a minimal effect on the ability to perform basic work activities.  The facts relied upon by the ALJ in determining that these impairments are not severe do not negate these effects.  The failure to seek ongoing neurological treatment, failure to use injection therapy, failure to seek emergency room treatment, continuing chiropractic care, and normal MRI and CT results cannot change the deleterious effects of dizziness, lightheadedness, nausea, photophobia, phonophobia, and blurred vision on Plaintiff's ability to perform basic work activities.  Likewise, the positive facts relied upon by the ALJ with respect to tremors and carpal tunnel do not negate the symptoms apparently accepted by the ALJ that Plaintiff has intention tremors, that she cannot use her hands for such fine work as sewing, and that she cannot use a computer for longer than fifteen minutes.  While these symptoms do not necessarily preclude all work, they clearly impose more than minimal effects on Plaintiff's ability to perform basic work activities.

The Commissioner does not argue otherwise, but appears to accept that the ALJ erred in finding that these impairments are not severe.  (Comm'r Br. 4) ("any alleged

error in finding Plaintiff's migraines and carpal tunnel syndrome with tremors non-severe, was harmless and does not merit remand").  The alleged error was harmless, in the Commissioner's view, because the ALJ continued his analysis beyond step two, and in his RFC assessment considered all of Plaintiff's impairments, both those he found to be severe, and those he found not to be severe.  The court cannot agree in the circumstances of this case.

As the Commissioner argues, a step two error may be harmless in certain circumstances, but it does not become harmless merely because the ALJ continues the sequential evaluation process beyond step two.  The failure to find certain impairments severe at step two is harmless only so long as at the later steps of the sequential evaluation process the ALJ considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.' " <u>Hill v. Astrue</u>, 289 F. App'x. 289, 291-292, (10th Cir. 2008).

In <u>Brescia v. Astrue</u>, 287 F. App'x 626, 628-629 (10th Cir. 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error, because under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  <u>See also</u>, <u>Oldham v. Astrue</u>, 509 F.3d 1254, 1256 (10th Cir. 2007) (an ALJ need

only make a finding that a claimant has severe impairments); 20 C.F.R. §§ 404.1523, 416.923 ("we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity.").  Again, in Hill, 289 F. App'x. at 291-292, the court held that the failure to find additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"

Here, it is by no means clear that the ALJ considered the effects of Plaintiff's migraines and carpal tunnel syndrome at the later steps of the sequential evaluation process, and remand is necessary to correct that error.  The Commissioner asserts that "in formulating Plaintiff's [RFC], the ALJ considered not just Plaintiff's severe impairments, but 'all [Plaintiff's] symptoms' and her 'medically determinable impairments." (Comm'r Br. 3) (citing R. 21).  She argues that the ALJ considered both Plaintiff's severe impairments and her non-severe impairments in assessing RFC, and that the court's general practice is to take the ALJ at his word when he says he has considered a matter. (Comm'r Br. 3-4) (citing R. 21; and Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)).

The Commissioner is correct when she argues that the court will usually take an ALJ at his word when he declares that he has considered a matter, but here the ALJ has not declared that he considered Plaintiff's non-severe impairments when he assessed RFC. In fact, the decision leaves the court with the distinct impression that the ALJ did not consider Plaintiff's migraines or her carpal tunnel syndrome when he assessed RFC. For that reason the court finds that remand is necessary.

In citing the law applicable to RFC assessment, the ALJ acknowledged that he must consider impairments that are not severe (R. 17), but the remainder of the decision does not suggest that he followed that requirement. Nowhere in his step three analysis did the ALJ even note that the effect of impairments that are not severe must be considered at later steps in the sequential evaluation process. (R. 18-20). And, when stating the law applicable at step two, the ALJ merely noted that if the Plaintiff "has a severe impairment or combination of impairments, the analysis proceeds to the third step." (R. 16). When concluding his step three analysis, the ALJ stated, "The undersigned has reviewed all of the evidence and concludes that the claimant's <u>severe</u> impairments do not meet or equal the severity of any listing," thereby suggesting that he had not considered whether the combination of Plaintiff's severe impairments with her non-severe impairments might medically equal the severity of a Listed impairment. (R. 21) (emphasis added).

The record cited by the Commissioner to demonstrate that the ALJ considered Plaintiff's severe impairments, her symptoms, and all of her medically determinable

impairments when assessing RFC will not carry the weight assigned to it.  In the discussion of his RFC assessment, it is clear that the ALJ considered all of Plaintiff's severe impairments because he specifically discussed and explained the weight accorded to each in his RFC assessment.  (R. 21-23) (specifically discussing the record regarding impairment of the spine, sleep apnea, left knee replacement, and fibromyalgia).  But, other than including "migraines" and "bilateral carpal tunnel syndrome" in a list of impairments upon which Plaintiff based her applications for disability (R. 21), the RFC assessment says nothing regarding these impairments or any limitations resulting from (or alleged, but not resulting from) them.

Moreover, the ALJ also specifically mention that he had considered "all symptoms" in his RFC assessment.  (R. 21).  But the only reference to "medically determinable impairments" as quoted in the Commissioner's Brief was the ALJ's credibility finding, in which he stated in boilerplate language found in many ALJ decisions "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision."  (R. 21).  This is clearly the ALJ's credibility finding, and contrary to the Commissioner's argument, says absolutely nothing with regard to whether the ALJ considered RFC limitations potentially resulting from Plaintiff's non-severe impairments, including migraines or carpal tunnel syndrome.

While the court does not agree with Plaintiff's assertion that "when a severe impairment is present there must be a limitation in the claimant's residual functional capacity that directly relates to that impairment" (Reply 2), it does recognize that a decision must reveal the ALJ considered the effect of all impairments when assessing RFC.  Here, the ALJ's step two discussion suggests that, in reality, he did not find Plaintiff's allegations with regard to migraines and carpal tunnel syndrome credible, but he did not affirmatively make that finding, and he did not explain which of those allegations he credited and which he did not.  Moreover, the symptoms related by Plaintiff with regard to those impairments more than minimally affect her ability to perform basic work activities, but nowhere did the ALJ discuss those effects or assess any resulting limitations.  That is error requiring remand.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent herewith.

Dated this 31st day of March 2016, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**